UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION AT LAFAYETTE

DUSTIN V. BAKER,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

Case No. 4:21-CV-5 JD

# OPINION AND ORDER

Plaintiff Dustin Baker appeals the denial of his claim for Disability Insurance Benefits and Supplemental Security Income. The ALJ had denied his claim after determining he was not disabled. The Court now remands the case to the Commissioner, finding that the ALJ committed reversible error by impermissibly "playing doctor" when he provided his residual functional capacity assessment without submitting new evidence in the record to a medical expert for review.

**A.**    **Factual Background**

On May 4, 2018, Baker applied for Disability Insurance Benefits and Supplemental Security Income, claiming that, by March 15, 2017, he had become unable to work due to his health conditions. (R. 259, 266.) In his application, Baker primarily alleged that he was disabled due to a prior heart attack, sleep apnea, and having bad knees. (R. 285.) At his telephonic hearing with the ALJ, Baker further alleged that he was experiencing issues with his back, feet, wrists, and hands. (R. 49, 52.)

On August 12, 2020, after reviewing Baker's medical records and listening to his testimony at the telephonic hearing, the ALJ found that he was not disabled. (R. 30.) The ALJ

determined that Baker suffers from multiple severe impairments, including osteoarthritis of the bilateral knees status post right knee arthroplasty, osteoarthritis of the bilateral hands, feet and ankles, status post anterior cervical discectomy and fusion, coronary artery disease status post stenting, obesity, and diabetes. (R. 19–20.) The ALJ then found that none of these impairments or combination of impairments was equal in severity to the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 20.) After reviewing the record and listening to Baker at the telephonic hearing, the ALJ concluded that Baker had the following residual functional capacity:

> Claimant is able to lift and/or carry 20 pounds occasionally and 10 pounds frequently and sit, stand and/or walk for six hours in an eight-hour workday, except: the claimant is unable to climb ladders, ropes or scaffolds, may occasionally climb ramps and stairs, may occasionally balance, stoop, kneel, crouch, crawl or reach overhead with the left upper extremity and can frequently perform gross manipulation with the bilateral upper extremities.

(R. 22.) While Baker could not perform past relevant work, the ALJ determined that Baker could perform a significant number of jobs in the national economy and, therefore, was not disabled. (R. 29–30.) Baker requested a review by the Appeals Council, which was denied on November 20, 2020, thereby making the ALJ's decision the final decision of the Commissioner for purposes of judicial review. *See* 42 U.S.C. § 405(g).

**B.     Standard of Review**

Because the Appeals Council denied review, the Court evaluates the ALJ's decision as the final word of the Commissioner of Social Security. *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). This Court will affirm the Commissioner's findings of fact and denial of benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). This

evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Even if "reasonable minds could differ" about the disability status of the claimant, the Court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

The ALJ has the duty to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Perales*, 402 U.S. at 399–400. In evaluating the ALJ's decision, the Court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the Court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Nevertheless, the Court conducts a "critical review of the evidence" before affirming the Commissioner's decision. *Id.* An ALJ must evaluate both the evidence favoring the claimant as well as the evidence favoring the claim's rejection and may not ignore an entire line of evidence that is contrary to his or her findings. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). The ALJ must provide a "logical bridge" between the evidence and the conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).

### C.  Standard for Disability

Disability benefits are available only to those individuals who can establish disability under the terms of the Social Security Act. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Specifically, the claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security regulations create a five-step process to

determine whether the claimant qualifies as disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)–(v); 416.920(a)(4)(i)–(v). The steps are to be used in the following order:

1. Whether the claimant is currently engaged in substantial gainful activity;
2. Whether the claimant has a medically severe impairment;
3. Whether the claimant's impairment meets or equals one listed in the regulations;
4. Whether the claimant can still perform past relevant work; and
5. Whether the claimant can perform other work in the community.

*See Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).

At step two, an impairment is severe if it significantly limits a claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1522(a), 416.922(a). At step three, a claimant is deemed disabled if the ALJ determines that the claimant's impairment or combination of impairments meets or equals an impairment listed in the regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If not, the ALJ must then assess the claimant's residual functional capacity, which is defined as the most a person can do despite any physical and mental limitations that may affect what can be done in a work setting. 20 C.F.R. §§ 404.1545, 416.945. The ALJ uses the residual functional capacity to determine whether the claimant can perform his or her past work under step four and whether the claimant can perform other work in society at step five. 20 C.F.R. §§404.1520(e), 416.920(e). A claimant qualifies as disabled if he or she cannot perform such work. The claimant has the initial burden of proof at steps one through four, while the burden shifts to the Commissioner at step five to show that there are a significant number of jobs in the national economy that the claimant can perform. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

**D.    Discussion**

Baker argues that the ALJ's decision should be remanded for two reasons. First, he argues that the ALJ improperly relied on the "stale opinions of the state agency consultant[s]." (DE 25 at 8.) Second, Baker argues that the ALJ failed to provide a good explanation for rejecting the opinion of Dr. Bangura, who was an examining physician contracted with by the Social Security Administration. (*Id.* at 13–15.) The most convincing argument presented by Baker is that the ALJ erred by relying on the outdated opinions of the state agency consultants. Since the Court finds this argument to be the most persuasive, it will not address Baker's second argument concerning Dr. Bangura, which will either be moot or can be addressed on remand.

When determining Baker's residual functional capacity, the ALJ considered medical records, as well as opinion evidence from Dr. Sands, Dr. Smartt, and Dr. Neville.[1] (R. 28.) The opinions of Dr. Sands and Dr. Smartt were virtually identical with the RFC for "light work" ultimately assigned by the ALJ: Dr. Sands opined that Baker was able to "lift and/or carry 20 pounds occasionally and 10 pounds frequently, can sit, stand and/or walk for six hours in an eight-hour workday, is unable to climb ladders, ropes or scaffolds, may occasionally climb ramps and stairs, may occasionally balance, stoop, kneel, crouch, crawl or reach overhead with the left upper extremity and can frequently perform gross manipulation with the bilateral upper extremities." (R. 28, 108.) Dr. Smartt then affirmed this assessment. (R. 28, R.146.) Notably, each of these assessments occurred prior to December 12, 2018. Dr. Sands consultative examination occurred on August 20, 2018, while Dr. Smartt's reconsideration occurred on December 12, 2018.

---

[1] The Court does not discuss the opinion provided by Dr. Neville since he was a state agency psychological consultant and Baker does not argue that there were significant developments in his psychological condition following this consultation.

In addition to considering these opinions, the ALJ also summarized the medical record. (R. 23–27.) The medical record which the ALJ examined spans from 2017 until June of 2020. (*Id.*) The ALJ began his summary of the medical record beginning in 2017. The ALJ notes that, during that year, Baker was "diagnosed with degenerative joint disease of the bilateral knees," "patellofemoral degenerative changes[,]" "arthritic changes of his bilateral hands," "bilateral hand pain[,]" "positive Tinel's and Phalen's signs," "right carpal tunnel syndrome,[]" and "neuropathy of the bilateral upper extremities." (R. 23–24.) Then, the ALJ summarizes the medical record for the year 2018. The medical record that year indicated further changes, including a diagnosis of "degenerative joint disease of the bilateral knees and bilateral midfoot degenerative changes," a finding of severe disc height loss, mild arthrosis, and stenosis of the spine, osteoarthritis in various joints of the bilateral hands, as well as spondylosis and collapse following a spinal fusion. (R. 24–25.)

Dr. Sands and Dr. Smartt opined on the medical record which existed prior to December 2018. Having opinions from medical experts such as Dr. Sands and Dr. Smart is necessary to reach an RFC determination. An ALJ, who has no medical training, would not be equipped to sort through the type of complex medical records discussed above unaided by a medical expert. It is due to this lack of expertise that the Seventh Circuit has repeatedly advised that ALJs are unqualified to conclude that medical records support their RFC "without an expert opinion" to interpret those medical records. *Akin v. Berryhill*, 887 F.3d 314, 317 (7th Cir. 2018) ("The MRI results may corroborate Akin's complaints, or they may lend support to the ALJ's original interpretation, but either way the ALJ was not qualified to make his own determination without the benefit of an expert opinion."); *see Kemplen v. Saul*, 844 F. App'x 883, 887 (7th Cir. 2021) ("This court has stated repeatedly that an ALJ may not 'play[] doctor and interpret new and

6

potentially decisive medical evidence without medical scrutiny.'"); *see Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014) ("Fatally, the administrative law judge failed to submit that MRI to medical scrutiny, as she should have done since it was new and potentially decisive medical evidence.").

Even though Dr. Sands and Dr. Smartt provided their opinion on the medical record prior to December 2018, the record *after* December 2018 was not submitted to any medical expert. The record extends all the way until June of 2020. In this time frame, there were new knee x-rays (R. 1075), new radiographic views of the left and right foot (R. 1086), new hand x-rays (R. 1067), and new back x-rays. (R. 1046.) These x-rays showed further degeneration after December 2018. For example, as it relates to Baker's hands, the new x-rays from March 2019 revealed "hypertrophic degenerative changes seen of the distal interphalangeal joints of the second through fifth fingers on the left and to a lesser degree the second through fifth fingers on the right." (R. 1069.) An orthopedist opined in October 2019 that the arthritis in Baker's fingers "involves many joints" and had no easy surgical fixes. (R. 1080.) However, Dr. Sands and Dr. Smartt only reviewed hand x-rays from July 2018, which found that there was "joint space narrowing" most notable involving the "3rd fingers." (R. 106.) Clearly, since the new x-rays showed degenerative changes involving almost every finger, there was a fair amount of deterioration in the condition of Baker's hands between July 2018 and October 2019.

Since Dr. Sands and Dr. Smartt were consulted in 2018, evidence in the record also supports that Baker's back, feet, and knees have gotten worse. As it relates to Baker's back, new x-rays from January 2019 showed "significant degenerative changes at the thoracolumbar junction" that were not amenable to surgical intervention. (R. 1046.) As it relates to his knees, in February 2019, Baker underwent a total right knee arthroplasty, which appears to have been

7

successful. (R. 1074–75.) However, new x-rays of his left knee then revealed further degeneration, showing "end-stage" degenerative changes which required "total knee replacement" surgery. (R. 1075.) Finally, there were new "radiographic views of the left and right foot" which demonstrated "significant degenerative arthritic changes." (R. 1086.) None of these medical records were reviewed by Dr. Sands or Dr. Smartt when they provided their opinion on Baker's residual functional capacity.

Despite the medical records from 2019 and 2020 displaying "significant" changes in Baker's back, hands, feet, and knees, the ALJ never submitted this potentially decisive evidence to a medical expert for review. Instead, the ALJ summarized the medical record before adopting the RFC provided by Dr. Sands. In doing so, the ALJ impermissibly "played doctor" by downplaying the significance of recent developments in the medical record: the ALJ dismissed the "end-stage" arthritis in Baker's left knee since he was "scheduled to undergo surgery;" the ALJ described the arthritis in Baker's hands and feet as "mild" when multiple reports noted that the arthritis was "significant;" and the ALJ failed entirely to address the new evidence of "significant degenerative changes at the thoracolumbar junction" in Baker's back. (R. 27–28.)

While the ALJ would not have been required to submit this evidence to a medical expert if the record only showed "mild changes" in his conditions, multiple portions of the record explicitly stated there were "significant" changes. In such a situation, the ALJ is required to seek out an opinion from a medical expert who is capable of properly assessing the impact of these new records on the RFC. *Kemplen,* 844 F. App'x at 887 (finding that the issue of whether new medical evidence needs to be submitted to a medical expert "comes down to whether the new information 'changed the picture so much that the ALJ erred by continuing to rely on an outdated assessment by a non-examining physician and by evaluating himself the significance of [the

subsequent] report . . . or whether the updated information was minor enough that the ALJ did not need to seek a second opinion.").

The Commissioner argues that the ALJ did not unilaterally interpret the new medical records because the ALJ simply "relied on the plain language of the medical records." (DE 26 at 13.) In support of this assertion, the Commissioner cites *Serna v. Saul*, No. 1:18-CV-63-HAB, 2019 WL 4254460, at *3 (N.D. Ind. Sept. 9, 2019). In *Serna*, the Court found that the ALJ did not error by noting that a "spinal cord simulator" was effective in controlling the claimant's pain, since this was simply "reporting [a] fact[] in the medical record[]" not attempting to read a medical record contrary to an actual physician. *Id.* However, unlike *Serna*, the ALJ here did, in fact, interpret medical records contrary to actual physicians by stating that Baker's arthritis in his hands and feet were "mild, "which is inconsistent with multiple observations made by physicians that the arthritis was "significant." Additionally, unlike *Serna*, the ALJ here made findings that Dr. Sands and Dr. Smartt's conclusions in their RFC assessments were "consistent with the record" without subjecting that record to scrutiny by a medical expert. (R. 28.) This meant that the ALJ had to come to his own independent conclusion about the significance of the new medical records, which is the exact practice that the Seventh Circuit has warned constitutes impermissibly "playing doctor." *See Moon v. Colvin*, 763 F.3d 718, 722 (7th Cir. 2014) ("[The ALJ's] mistaken reading of the evidence illustrates why ALJs are required to rely on expert opinions instead of determining the significance of particular medical findings themselves."); *See Blakes ex rel. Wolfe v. Barnhart*, 331 F.3d 565, 570 (7th Cir. 2003) ("[T]he ALJ seems to have succumbed to the temptation to play doctor when she concluded that a good prognosis for speech and language difficulties was in-consistent with a diagnosis of mental retardation because no expert offered evidence to that effect here."); *Rohan v. Chater,* 98 F.3d 966, 970 (7th Cir. 1996)

("ALJs must not succumb to the temptation to play doctor and make their own independent medical findings.").

Accordingly, the Court finds that the ALJ erred by not having a medical expert review the new clinical records. Furthermore, this cannot be considered mere harmless error. Harmless error occurs when "it is predictable with great confidence that the agency will reinstate its decision on remand because the decision is overwhelmingly supported by the record though the agency's original opinion failed to marshal that support . . . ." *Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010). As explained above, the record indicates significant changes in Baker's physical condition which required the review of a physician. The Court cannot predict with great confidence that the agency would reinstate its decision on remand when a medical expert provides an opinion on the RFC in light of these new developments. Remand in such a circumstance is warranted. *See Green v. Apfel*, 204 F.3d 780, 782 (7th Cir. 2000) (remanding where the court could "not see how on this record the administrative law judge could have rejected the claim of disabling pain without having a physician examine Green, or at least examine his clinical records").

### E.   Conclusion

On the basis of the foregoing, the Court **REVERSES** the Commissioner's decision and **REMANDS** this matter to the Commissioner for further proceedings consistent with this opinion. The Clerk is directed to prepare a judgment for the Court's approval.

SO ORDERED.

ENTERED: September 22, 2022

/s/ JON E. DEGUILIO
Chief Judge
United States District Court